## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

BILLIE JO LAMB,

      Plaintiff,

      v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

      Defendant.

CIVIL ACTION NO. 3:21-cv-00907

(SAPORITO, M.J.)

## **<u>MEMORANDUM</u>**

In this matter, the plaintiff, Billie Jo Lamb, seeks judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I. BACKGROUND

On August 15, 2019, Lamb protectively filed applications for disability insurance benefits and supplemental security income, both asserting a disability onset date of August 30, 2018. Her claims were initially denied by state agency reviewers on December 19, 2019. The plaintiff then requested an administrative hearing.

A hearing was held on October 5, 2020, before an administrative law judge, Frank Barletta (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Dana Marmo. The plaintiff was represented by counsel at the hearing.

On October 21, 2020, the ALJ denied Lamb's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Lamb was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Lamb had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that Lamb had the severe impairments of: degenerative disc disease, lumbar sprain/strain, obstructive sleep apnea,

obesity, major depressive disorder with psychotic features, post-traumatic stress disorder, and anxiety.

At step three, the ALJ found that Lamb did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. In doing so, the ALJ considered Lamb's limitations in four broad functional areas as a result of her mental disorders, finding moderate limitations in two functional areas—(1) interacting with others, and (2) concentrating, persisting, or maintaining pace—and mild limitations in the other two—(3) understanding, remembering, or applying information, and (4) adapting or managing oneself. *See generally* 20 C.F.R. §§ 404.1520a(c), 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments). In connection with listings 12.04, 12.06, and 12.15, the ALJ also considered whether Lamb's mental disorders were "serious and persistent," finding that her impairments had not required medical treatment, mental health therapy, psychosocial

support, or a highly structured setting that is ongoing and that diminished the symptoms and signs of her mental disorders, nor that she had achieved only marginal adjustment as a result. *See generally id.* § 12.00(G) (explaining process for using alternative paragraph C criteria to evaluate certain mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Lamb's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Lamb had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[2] with the following limitations:

> [T]he claimant can frequently balance, and occasionally stoop, kneel, crouch, crawl and climb ramps and stairs, but can never climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to extreme cold and heat, vibration, and hazards. Additionally, she is limited to work involving only simple, routine tasks, but not at a production rate pace, and involving no more than simple work-related decisions. She can tolerate no more than occasional changes in the work setting, and she is limited to occasional interaction with supervisors, co-workers,

---

[2] The Social Security regulations define "sedentary work" as a job that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(b); *id.* § 416.967(b).

and the public.

(Tr. 21.)

In making these factual findings regarding Lamb's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Lamb was unable to perform her past relevant work as actually or generally performed.

At step five, the ALJ concluded that Lamb was capable of performing other work that exists in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Lamb was capable of performing the requirements of representative occupations such as video monitor (DOT # 379.367-010), document

preparer (DOT # 249.587-018), or assembler (DOT # 713.687-018). Based on this finding, the ALJ concluded that Lamb was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on April 1, 2021, making the ALJ's October 2020 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed her complaint in this court on May 19, 2021. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income

administrative decisions).

Lamb asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate the medical opinion of Lamb's treating orthopedic specialist; (2) the ALJ failed to properly evaluate subjective evidence regarding Lamb's symptoms; (3) the ALJ's RFC determination failed to adequately reflect the moderate limitations he had found with respect to Lamb's ability to concentrate, persist, or maintain pace; (4) the ALJ failed to resolve a conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles*; and (5) the ALJ lacked substantial evidence to support his finding that the job of optical goods final assembler existed in significant numbers.

## A. Evaluation of Medical Opinions

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between"

conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in August 2019. Thus, a relatively new regulatory framework

governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*,

527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'"

*Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(2), 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability), and *id.* §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency), *with id.* §§ 404.1527(c)(3), 416.927(c)(3) (supportability), and *id.* §§ 404.1527(c)(4), 416.927(c)(4) (consistency).[3] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R.

---

[3] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

§§ 404.1520c(b)(2), 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. Prior Administrative Findings

The ALJ considered the prior administrative findings in this case, finding them to be "persuasive." (Tr. 26–27.)

The prior administrative findings included the opinions of a state agency psychological consultants, Virginia C. Martin, Psy.D., and Melissa Lynn Franks, Psy.D., who found that, notwithstanding her medically determinable mental impairments, Lamb had no more than mild or moderate limitations in any of the four areas of mental functioning. Dr. Martin and Dr. Franks further found that Lamb was

moderately limited in her ability to ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Martin and Dr. Franks also found that Lamb was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. In evaluating the opinions of Dr. Martin and Dr. Franks, the ALJ found "these opinions persuasive as they are supported by detailed explanations and are consistent with the treatment records discussed above, which show rather normal mental status examinations findings and no significant limitations that would limit the claimant to marked or extreme areas." (Tr. 27.)

The prior administrative findings also included the opinions of state

agency medical consultants, Bert Spetzler, M.D., and Louis Joseph Tedesco, M.D., who found that Lamb was capable of performing sedentary work with some postural and environmental limitations. Based on their review of Lamb's medical records, Dr. Spetzler and Dr. Tedesco found that Lamb was capable of lifting or carrying up to 10 pounds frequently. Both doctors found that Lamb was capable of sitting for up to six hours per 8-hour workday; Dr. Tedesco found that Lamb was capable of standing or walking for a total of four hours per 8-hour workday, while Dr. Spetzler found that she was capable of standing or walking for up to two hours per workday, provided she was permitted to periodically alternate sitting and standing to relieve pain and discomfort. Both doctors found that Lamb was capable of frequent balancing and occasional kneeling, crouching, crawling, or climbing of ramps or stairs; Dr. Tedesco found that Lamb was capable of frequent stooping and occasional climbing of ladders, ropes, or scaffolds, while Dr. Spetzler found that she was capable of only occasional stooping and no climbing of ladders, ropes, or scaffolds at all. Both doctors found that Lamb was subject to certain environmental limitations, including the avoidance of concentrated exposure to vibrations or hazards; Dr. Spetzler also found

that she should avoid concentrated exposure to extreme cold or heat. In evaluating the opinions of Dr. Spetzler and Dr. Tedesco, the ALJ found "these opinions persuasive. While they are not exactly the same, the majority of the limitations are, and the differences can be argued for both as they are supported and consistent with the various treatment records which show lower back and left extremity problems which have been treated with multiple surgeries." (Tr. 27.)

The plaintiff only addresses the evaluation of these particular medical opinions in passing, discussing them only in comparison to the medical opinion of her treating physician. She appears to object to the ALJ's evaluation of the state agency medical and psychological consultants' findings and opinions based solely on the fact that, unlike the plaintiff's treating physician, they never actually examined her in person. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence to the extent the opinion is consistent with other medical evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d

100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

The plaintiff has not otherwise challenged the ALJ's evaluation of these prior administrative findings, including the opinions of the state agency medical and psychological consultants.

Accordingly, we find the ALJ's evaluation of the prior administrative findings, including the medical opinions of the state agency medical and psychological consultants, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 2. Opinion of Consultative Examining Psychologist

On December 4, 2019, Lamb was seen and examined by a consultative examining psychologist, Jennifer Betts, Psy.D. On examination, Dr. Betts observed a depressed and anxious affect and reportedly depressed mood. Dr. Betts observed a cooperative demeanor and responsiveness to questions, with some evasiveness by Lamb on the subjects of her criminal record and her family history of mental illness. Dr. Betts found Lamb's attention and concentration to be limited by lack of persistence. All other observations were normal or fair. Dr. Betts

recorded mental health diagnoses of (a) major depressive disorder with psychotic features and (b) post-traumatic stress disorder, with a guarded prognosis given Lamb's psychosis, her lack of active mental health treatment, and complications from her medical conditions. Dr. Betts also completed an agency form report on Lamb's ability to do work-related activities. In the area of understanding, remembering, and carrying out instructions, Dr. Betts opined that Lamb had a marked limitation in her ability to make judgments on complex work-related decisions, a moderate limitation in her ability to carry out complex instructions or to make judgments on simple work-related decisions, and a mild limitation in her ability to understand and remember instructions (simple *or* complex) or to carry out simple instructions. In the area of interacting with others, Dr. Betts opined that Lamb had moderate limitations in her ability to interact appropriately with supervisors or co-workers or to respond appropriately to usual work situations and to changes in a routine work setting, but only a mild limitation in her ability to interact with the public. Dr. Betts found no limitations in any other work-related areas of mental functioning.

Upon review, the ALJ found that Dr. Betts's opinion was only

somewhat persuasive, as the mild and moderate limitations are supported by the consultative examination and consistent with the treatment records showing the claimant receiving mental health treatment for her depression and anxiety. However, the marked limitation in the claimant's ability to make judg[]ments on complex work related decisions is not supported by the consultative examination, nor is it consistent with the treatment records, which show rather benign mental status examination findings.

(Tr. 26.)

The plaintiff has not challenged the ALJ's evaluation of this medical opinion.

### 3. Independent Medical Examination

On March 21, 2019, Lamb was seen by an orthopedic specialist, Allister R. Williams, M.D., for an independent medical examination in connection with workers compensation proceedings. On examination, Dr. Williams observed that Lamb presented with normal gait and was alert and oriented to person, place, and time. Dr. Williams noted some mild tenderness in the lower lumbar spine, but no palpable spasms. He found range of motion of the lumbar spine included extension of 10 degrees and flexion to 12 inches from the floor and 60 degrees of axial rotation bilaterally. He observed 5/5 strength in all muscle groups of both lower extremities. He observed intact sensation, negative straight leg raise

bilaterally, symmetric reflexes of 2+ in both knee and ankle jerk, and a full range of motion of the hips. Based on this physical examination and a review of Lamb's medical records, Dr. Williams opined that she had suffered a work-related lumbar sprain or strain, but she had recovered from the injury at the time of the examination. His report acknowledged, however, that Lamb also had pre-existing spinal conditions of pars defect and spondylolisthesis, to which Dr. Williams attributed Lamb's then-current complaints of low back pain. Dr. Williams opined that Lamb was capable of returning to work as a home health aide in a full duty capacity without restrictions.

Upon review, the ALJ found that Dr. Williams's opinion was not persuasive "to the extent that it finds the claimant has no limitations when returning to work. That statement is not consistent with the treatment records, which show continuing treatment and ongoing limitations with regard to the claimant's back." (Tr. 26.)

The plaintiff has not challenged the ALJ's evaluation of this medical opinion.

### 4. Opinion of Treating Orthopedist

On September 18, 2020, Lamb's treating orthopedic doctor,

Christopher Henderson, M.D., completed a medical source statement of ability to do work-related activities. Dr. Henderson reported a diagnosis of spondylolisthesis of the lumbar region with a fair prognosis. He reported Lamb's symptoms as continued back and leg pain. Dr. Henderson opined that Lamb was capable of sitting no more than four hours in an 8-hour workday and standing or walking no more than two hours in an 8-hour workday, with no more than 30 minutes of uninterrupted sitting or standing at one time. Dr. Henderson opined that Lamb was only capable of lifting or carrying up to 10 pounds occasionally, with no pushing or pulling activities with arms or legs, bilaterally. Dr. Henderson opined that Lamb was capable of reaching only rarely (no more than 5% of the time). Dr. Henderson found no other manipulative limitations, nor did he find any environmental limitations applied. Dr. Henderson further opined that Lamb would require unscheduled breaks of up to 15 minutes every two hours throughout the workday,[4] and that she was likely to be absent from work up to two days per month due to her impairments or treatments, including medications that cause

---

[4] Dr. Henderson also opined that Lamb would require a reclining break every eight hours, but this particular limitation does not require any breaks to be taken during the normal 8-hour workday.

drowsiness. (Tr. 2407–08.)

Upon review, the ALJ found Dr. Henderson's opinion:

> somewhat persuasive to the extent the lifting and
> carrying restrictions are supported by and consistent
> with the treatment records noting restrictions in the
> claimant's range of motion with her lumbar spine and
> antalgic gait. However, the limitations with regard to
> sitting/standing/walking, the breaks she must take and
> amount of time absent from the job are not consistent
> with the treatment records. While the claimant has
> undergone two surgeries, with the most recent in
> August of 2020, she reported that she is still able to do
> chores around her house, drive[,] and take care of her
> children.

(Tr. 26.) In addition, the ALJ observed that treatment notes by Dr.
Henderson and Lamb's other treating physicians had noted on occasion
that Lamb could return to work at a sedentary duty level. The ALJ found
these opinions "persuasive as they are supported by the doctors' records,
consistent with the objective and diagnostic findings[,] and are from
doctors who treat the claimant on a regular basis." (*Id.*)

Here, the ALJ properly considered the medical evidence of record
and the relevant factors of supportability and consistency. He expressly
articulated the basis of his evaluation and his findings with respect to
the persuasiveness of the opinion as well.

In her brief, the plaintiff summarizes the evidence in great detail

and appears to argue that the ALJ's decision should be reversed because some of this evidence contradicts the ALJ's findings. But it is the exclusive province of the ALJ, not this court, to resolve conflicting evidence. "In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for that of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams*, 970 F.2d at 1182); *see also Stancavage v. Saul*, 469 F. Supp. 3d 311, 334 (M.D. Pa. 2020). Moreover, to the extent the plaintiff has suggested that the ALJ's failure to discuss particular items of evidence, it is well settled that an ALJ is not required to discuss *every* detail of the record evidence cited in his opinion. *See Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008). "A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it." *Philips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004) (citation omitted). While the evidence cited by the plaintiff on appeal might reasonably support a different conclusion with respect to the persuasiveness of Dr. Henderson's medical

opinion, it does not compel it.

Accordingly, we find the ALJ's evaluation of the opinion of the plaintiff's treating orthopedist, Dr. Henderson, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### B. Subjective Evidence of the Plaintiff's Symptoms

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of Lamb's symptoms. *See generally* 20 C.F.R. §§ 404.1502(i), 416.902(n) ("Symptoms means your own description of your physical or mental impairment.").

Standing alone, a claimant's allegation of pain or other symptoms is not enough to establish an impairment or disability. 20 C.F.R. § 416.929(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). "An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433

(3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.* at *3; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4.

Once the ALJ has found that a medically determinable impairment has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, in evaluating the plaintiff's symptoms, the ALJ expressly

considered and extensively discussed both the medical and non-medical evidence in the record. (Tr. 21–27.) This included the plaintiff's statements and testimony regarding the limiting effects of her symptoms. Based on his consideration of the whole record, the ALJ properly concluded that, while Lamb's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22.)

The plaintiff argues that the ALJ erred in considering her activities of daily living when evaluating her symptoms. It is indeed true that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637 F.2d 968, 971–72 (3d Cir. 1981). But, nevertheless, an ALJ may properly consider a plaintiff's activities of daily living when evaluating his subjective complaints of pain or other symptoms. *See Turby v. Barnhart*, 54 Fed. App'x 118, 121 n.1 (3d Cir. 2002) ("Although certainly disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity, it is nonetheless

appropriate for the ALJ to consider the number and types of activities in which the claimant engages.") (citations, brackets, and internal quotation marks omitted); *Durden v. Colvin*, 191 F. Supp. 3d 429, 442 (M.D. Pa. 2016) ("[I]t is permissible for such activities to be used to assess a claimant's [subjective allegations] in light of any true contradiction between his or her alleged severity of symptoms and the claimant's activities."). Indeed, the applicable regulations *mandate* such consideration by the ALJ. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

Although Lamb quibbles with the outcome of the ALJ's analysis of the evidence of record, it is clear that the ALJ properly evaluated the plaintiff's symptoms in accordance with the applicable regulations, and that the ALJ reasonably concluded that, notwithstanding the plaintiff's subjective complaints of pain and other symptoms, the evidence as a whole did not support physical or mental limitations in excess of those set forth in the ALJ's RFC determination. While this same evidence might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the subjective evidence

of the plaintiff's symptoms is supported by substantial evidence and was reached based upon a correct application of the relevant law

### C. Concentrating, Persisting, or Maintaining Pace

At step three, the ALJ found that Lamb had moderate limitations in the functional area of concentrating, persisting, or maintaining pace. Later, in determining the plaintiff's RFC, the ALJ found that Lamb was capable of performing "simple, routine tasks, but not at a production rate pace, and involving no more than simple work-related decisions." (Tr. 21.)

Citing *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), the plaintiff contends that the ALJ's RFC determination failed to adequately account for Lamb's moderate limitations in concentration, persistence, and pace. The plaintiff appears to suggest that *Ramirez* established a categorical rule that a claimant with a moderate limitation in concentration, persistence, or pace is incapable of performing work involving even simple tasks.

In *Ramirez*, as the Third Circuit itself emphasized in its opinion, the court's determination that a "simple one or two-step tasks" restriction was not supported by substantial evidence hinged primarily, and expressly, on one factor: the limitation did not adequately reflect the

claimant's deficiencies in pace. *Ramirez*, 372 F.3d at 554. Here, however, the ALJ's RFC determination expressly included a pace-related limitation, restricting the plaintiff to work involving "simple, routine tasks, *but not at a production rate pace*, and involving no more than simple work-related decisions." (Tr. 21.)

Other decisions by the Third Circuit underscore the fact-driven nature of the *Ramirez* decision. In *McDonald v. Astrue*, 293 Fed. App'x 941 (3d Cir. 2008), the Third Circuit found that a hypothetical involving an individual limited to "simple, routine tasks" adequately portrayed the limitations of a plaintiff who only had "moderate limitations with his ability to maintain concentration, persistence and pace." *Id.* at 946. In *Russo v. Astrue*, 421 Fed. App'x 184 (3d Cir. 2011), the Third Circuit explained that a hypothetical involving an individual who "could understand, remember, and carry out simple instructions, would have limited contact with the public and coworkers, and would not have a quota to fulfill" accurately conveyed the limitations of a plaintiff who had "moderate difficulties with concentration, persistence, or pace." *Id.* at 192.

Most salient, however, is a more recent and *binding* published

decision by the Third Circuit, *Hess v. Commissioner Social Security*, 931 F. 3d 198 (3d Cir. 2019). In *Hess*, the Third Circuit revisited the "simple tasks" issue to clarify its *Ramirez* holding. The plaintiff in *Hess* argued that *Ramirez* imposed a categorical rule that "a limitation to simple instructions and simple work-related decisions does not reflect a claimant's moderate restrictions in concentration, persistence, or pace." *Id.* at 210. The Third Circuit disagreed, explaining that

> *Ramirez* did not hold that there is any categorical prohibition against using a "simple tasks" limitation after an ALJ has found that a claimant "often" faces difficulties in "concentration, persistence, or pace." Rather, a "simple tasks" limitation is acceptable after such a finding, as long as the ALJ offers a valid explanation for it.

*Id.* at 212.[5]

The *Hess* court went on to explain that "[t]he relationship between 'simple tasks' limitations and 'concentration, persistence, or pace' is a close one." *Id.*

> Nevertheless, a "simple tasks" limitation alone does not account for the *extent* of a claimant's difficulties in

---

[5] The "often" terminology used in *Ramirez* reflects the superseded nomenclature of an earlier iteration of agency regulations. In this context, courts have held that the terms "often" and "moderate" are equivalent. *See, e.g., Drelling v. Colvin*, Civil Action No. 14-2211, 2016 WL 245288, at *8 (E.D. Pa. Jan. 20, 2016).

"concentration, persistence, or pace." Without explanation, such a limitation does not warrant a conclusion about whether a claimant's difficulties in "concentration, persistence, or pace" are so serious that he cannot satisfy the functional requirements of "simple tasks." An explanation is thus important, regardless of the particular scale used for rating "concentration, persistence, or pace." It must be given whether difficulties in that area are said to arise "often" or are called "moderate" in severity.

*Id.* at 213.

Here, the ALJ explained at length and with sound reasoning why Lamb's moderate limitations in concentration, persistence, or pace were not so significant that she was incapable of performing "simple, routine tasks, but not at a production rate pace, and involving no more than simple work-related decisions." (Tr. 21.) In finding at step three that Lamb had moderate limitations in concentration, persistence, or pace, the ALJ noted that:

> [Lamb] reported that she can perform her activities of daily living with little issue, and she helps take care of her younger children. The claimant reported that she will help prepare meals on occasion and do some of the cleaning and laundry around the house. The claimant further reported that she is capable of driving and going out to the store to shop for items needed. She also reported that she enjoys playing games on her tablet, watching television and listening to music and does not have any issues in doing so. In addition, the claimant's mental status evaluation noted the claimant's

> attention and concentration were deemed limited but only by lack of persistence. The claimant was able to do simple calculations, but when presented with serial 7's she refused to make an attempt, stating that she was overwhelmed. However, she was able to complete serial 3's and her cognitive functioning was deemed to be in the low average range.

(Tr. 20 (citation omitted).) Prior to step four, in evaluating Lamb's RFC, the ALJ noted that mental health treatment records documented a series of encounters in which Lamb's treating mental health providers observed that her attention and concentration were "within normal limits," "good," unimpaired, or "fair," and he once again referenced the report by consultative examiner Dr. Betts finding that Lamb's attention and concentration were "deemed limited by lack of persistence." (Tr. 25.)

We find this explanation by the ALJ to be sufficient. The ALJ's limitation of Lamb's RFC—and the corresponding hypothetical posed to an impartial vocational expert—to "simple, routine tasks, but not at a production rate pace, and involving no more than simple work-related decisions," was supported by a valid explanation.

Accordingly, we find the ALJ's evaluation of the plaintiff's moderate limitations in concentrating, persisting, or maintaining pace in connection with his determination of the plaintiff's RFC is supported by

substantial evidence and was reached based upon a correct application of the relevant law.

### D. Conflict Between Vocational Expert Testimony and the *Dictionary of Occupational Titles*

At step five, the ALJ relied on the testimony of a vocational expert to identify three representative occupations the plaintiff was capable of performing despite her impairments: video monitor (DOT # 379.367-010); document preparer (DOT # 249.587-018); and assembler (DOT # 713.687-018). As required by Social Security Ruling 00-4p, the ALJ inquired of the vocational expert whether her testimony was consistent with the *Dictionary of Occupational Titles*, and the vocational expert responded that it was. Nevertheless, the plaintiff contends on appeal that the vocational expert's testimony *was not* consistent with the descriptions for two of these three positions as set forth in the *Dictionary of Occupational Titles*, and thus the ALJ's determination that Lamb was not disabled because work existed in the national economy in significant numbers was not supported by substantial evidence.

In determining whether a claimant is capable of performing work that exists in significant numbers in the national economy, the agency and the courts routinely rely on the *Dictionary of Occupational Titles* (4th

ed. 1991) ("*DOT*"), a publication by the U.S. Department of Labor that identifies thousands of jobs by name and describes the skills and other attributes required to perform each. *See* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) ("[W]e will take administrative notice of reliable job information available from various governmental and other publications. For example, we will take notice of . . . [the] Dictionary of Occupational Titles, published by the Department of Labor . . . ."); *see also Evans v. Metro. Life Ins. Co.*, 190 Fed. App'x 429, 436 n.7 (6th Cir. 2006) (recognizing that courts may take judicial notice of the *DOT* as well). The *DOT* includes a description of the "general educational development" ("GED") for each of the jobs catalogued therein. "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *DOT* app. C, 1991 WL 688702. The GED scale is composed of three divisions, one of which is relevant here—"Reasoning Development." *See id.* In occupations described as having Reasoning Development Level 1, satisfactory job performance requires that an employee be able to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and to "[d]eal with standardized situations with occasional

or no variables in or from these situations encountered on the job." *Id.* Occupations described as having Reasoning Development Level 2 require an employee be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* Occupations described as having Reasoning Development Level 3 require an employee to be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

Here, the ALJ determined that Lamb retained the RFC to perform "simple, routine tasks, but not at a production rate pace, and involving no more than simple work-related decisions." (Tr. 21.) Such an RFC is consistent with the capability to perform level 2 reasoning. *See Money v. Barnhart*, 91 Fed. App'x 210, 215 (3d Cir. 2004); *Inman v. Berryhill*, No. 3:18-cv-00103, 2018 WL 7247123, at *7 (M.D. Pa. Dec. 28, 2018), *report and recommendation adopted by* 2019 WL 469912 (M.D. Pa. Feb. 6, 2019; *Durden v. Colvin*, 191 F. Supp. 3d 429, 459 (M.D. Pa. 2016).

Two of the positions identified by the vocational expert in this case,

however—video monitor (DOT # 379.367-010) and document preparer (DOT # 249.587-018)—are described in the *DOT* as requiring the capability to perform *level 3 reasoning*. The plaintiff contends that there is an inherent conflict between an RFC for "simple, routine work" and jobs requiring a capacity for level 3 reasoning, and thus the ALJ's reliance on these two jobs is not supported by substantial evidence. But, in a case cited by the plaintiff with respect to other points of contention, the Third Circuit has previously considered this issue and rejected that proposition, holding that "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014).

Here, as in *Zirnsak*, the ALJ asked the vocational expert whether her testimony was consistent with the *DOT*, and the vocational expert responded that it was. (Tr. 53–54.) Neither Lamb nor her attorney challenged the vocational expert on these points or otherwise identified any apparent inconsistency between the vocational expert's testimony and the *DOT*. (Tr. 56.) Thus, in the absence of any evidence to suggest that the represented claimant could not meet the demands of jobs that

require level 3 reasoning, the ALJ was entitled to rely on the vocational expert's testimony with respect to these jobs. *See Zirnsak*, 777 F.3d at 617; *see also Clawson v. Astrue*, Civil Action No. 11-294, 2013 WL 154206, at *6 (W.D. Pa. Jan. 15, 2013); *cf. Neifert v. Saul*, 2020 WL 6585897, at *6–*7 (M.D. Pa. Nov. 10, 2020) (remanding where *pro se* claimant with profound mental limitations could not be expected to identify or develop conflict between vocational expert testimony and *DOT* description with respect to reasoning level requirements).

Ultimately, however, we need not resolve whether Lamb retained the capacity to perform these two representative level 3 reasoning jobs because, as the plaintiff has acknowledged in her brief, the ALJ also found, based on the vocational expert's testimony, that Lamb was capable of performing the requirements of a third representative job—an optical goods final assembler (DOT # 713.687-018)—which is described in the *DOT* as requiring the capability to perform level 1 reasoning, well within the scope of "simple, routine work" Lamb had been found capable of performing. Under the applicable regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in *one or more occupations*) having requirements which [the claimant is] able to

meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b) (emphasis added). Moreover, based on testimony by the vocational expert, the ALJ found that a significant number of jobs existed in this field—250,000 jobs nationally—meaning that this occupation alone existed in significant numbers in the national economy. *See Young v. Astrue*, 519 Fed. App'x 769, 772 (3d Cir. 2013) (per curiam) ("[T]he testimony from the vocational expert that 20,000 jobs were available in the national economy is sufficient to support a finding that work exists in significant numbers."); *Bennett v. Barnhart*, 264 F. Supp. 2d 238, 259 (W.D. Pa. 2003) (finding vocational expert testimony that 187,500 jobs were available nationally was "satisfactory to establish the existence of a significant number of jobs in the national economy"); *cf. Leonard v. Heckler*, 582 F. Supp. 389, 391–92 (M.D. Pa. 1983) (finding vocational expert testimony that 5,000 jobs existed in the national economy was insufficient to establish that work exists in significant numbers).

With respect to this last position, the plaintiff argues that the vocational expert's testimony that 250,000 such jobs existed conflicted with other job data publications administratively noticed by the agency,

namely the *County Business Patterns* ("*CBP*") and the *Occupational Outlook Handbook* ("*OOH*"). *See generally* 20 C.F.R. §§ 404.1566(d), 416.966(d). It is true that, in administrative proceedings before the agency, a claimant may challenge a vocational expert's testimony on the ground that it conflicts with information provided by the *CBP* or the *OOH*. *See Ford v. Saul*, 950 F.3d 1141, 1159 n.14 (9th Cir. 2020). But here, neither Lamb nor her counsel did so, either at the administrative hearing or afterward.

As a result of that failure to raise this challenge in administrative proceedings before the agency, we are unable to find any reference to such evidence in the administrative record before us, and the plaintiff's brief cites none. It contains only the conclusory statements of counsel that these other publications indicate the existence of significantly fewer optical goods final assembler positions—only 24 positions nationally. Of course, it is hornbook law that statements by counsel in a brief are *not* evidence. *See, e.g.*, *Dominic J. v. Wyoming Valley W. High Sch.*, 362 F. Supp. 2d 560, 565 (M.D. Pa. 2005); *Weiss v. York Hosp.*, 524 F. Supp. 433, 439 (M.D. Pa. 1981). Moreover, in reviewing the denial of social security disability benefits, this district court's review is limited to evidence in the

administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *id.* § 1383(c)(3); *Matthews v. Apfel*, 239 F.3d 589, 593–94 (3d Cir. 2001); *Myers*, 373 F. Supp. 3d at 533.

Finally, we note that even if the plaintiff were able to now point to such evidence, any such apparent conflict between the vocational expert's testimony and other job data publications does not trigger the ALJ's duty to further develop the record. An ALJ is required only to resolve conflicts *sua sponte* between a vocational expert's testimony and the *Dictionary of Occupational Titles* specifically, not other sources of job information. *See* Soc. Sec. Ruling 00-4p, 2000 WL 1898704; *Shaibi v. Berryhill*, 883 F.3d 1102, 1109–10 (9th Cir. 2017).

Accordingly, we find the ALJ's evaluation of and reliance on the vocational expert's testimony with respect to the existence of work in significant numbers in the national economy that the plaintiff could perform despite her limitations—namely, the occupation of optical goods final assembler, which numbered 250,000 positions nationally—is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Lamb was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: November 2, 2022                    ***s/Joseph F. Saporito, Jr.***
                                           JOSEPH F. SAPORITO, JR.
                                           United States Magistrate Judge